IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY HOLDING CORP., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-0896-N |
| | § | |
| FEDERAL HOLDING COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This is a complex case.  It presents an entrée of insurance coverage, accompanied by a side dish of ERISA and COBRA, seasoned with a dash of bankruptcy.  Before the Court are Plaintiffs Mary Kay Holding Corporation, Mary Kay Inc. and New Arrow Corp.'s (collectively, "Mary Kay") Motion for Partial Summary Judgment [50] and Defendant Federal Insurance Company's ("Federal") Motion for Summary Judgment [59].  Because the Court finds that the underlying MSC lawsuit did not  allege a "wrongful act" as defined by the insurance policy between the parties, the Court grants Federal's motion for summary judgment and denies Mary Kay's motion for partial summary judgment.

### I. THE INSURANCE POLICY AND THE UNDERLYING LAWSUIT

In this insurance coverage dispute, Mary Kay seeks damages from Federal for its failure to defend and indemnify Mary Kay under a liability insurance policy that Federal issued to Mary Kay.

## A. The Insurance Policy

In August 2000, Mary Kay purchased an insurance policy from Federal to cover, among other things, claims related to employee benefits plans. Mary Kay sought to renew that policy in the summer of 2002, and Federal issued Insurance Policy No. 8146-1317 (the "Policy") to Mary Kay on September 12, 2002. The Policy provided coverage for certain claims made during the policy period of August 1, 2002 to August 1, 2003.

At issue in this litigation is the Fiduciary Liability section of the Policy, which provided coverage for claims alleging certain types of misconduct, defined in the Policy as "wrongful acts." The Policy defines "wrongful act" as: (1) alleged breaches of any duty imposed by ERISA[1] upon a fiduciary of a sponsored plan; (2) matters claimed against fiduciaries of a sponsored plan because of their service as a fiduciary; and (3) negligence in the administration of a sponsored plan. A "sponsored plan" is an employee benefits plan that is sponsored by Mary Kay or one of its subsidiaries.

## B. The MSC Lawsuit

Marketing Specialists Corporation ("MSC") was a national food and consumer products broker formed in August 1999. Although the record is not entirely clear on this point, it appears that Mary Kay indirectly owned a substantial equity position in MSC at one time. Throughout its short history, MSC struggled with an aggressive growth strategy and persistent insolvency, repeatedly turning to its financial sources, including Mary Kay, for

---

[1]The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461.

additional funds.  Ultimately, however, MSC filed for bankruptcy in May 2001.  In May 2002, the bankruptcy court confirmed MSC's plan of reorganization.  Pursuant to that plan, all outstanding equity in MSC was cancelled effective May 29, 2002, and new shares issued to the Marketing Specialists Creditors' Trust.  *See* App. to Defs.' Mot. for Summ. J. at 738.

In May 2003, MSC, several of its subsidiaries, and the trustee of the Marketing Specialists Creditors' Trust (collectively, "MSC Plaintiffs") filed a lawsuit against Mary Kay following MSC's bankruptcy, alleging breaches of corporate fiduciary duties, fraud, and violations of ERISA (the "Underlying Lawsuit").  Of the twenty-seven counts in the 191 page complaint (the "Complaint"), the sole count at issue in this coverage dispute is Count Three, entitled "Breach of ERISA Fiduciary Duties, Prohibited Transactions, and Failure to Comply with COBRA."  In Count Three, the MSC Plaintiffs alleged that officers of Mary Kay, while acting as ERISA fiduciaries with respect to MSC's employee benefits plans, misused and diverted plan assets to pay general corporate obligations in violation of the fiduciary duties imposed by ERISA.  The MSC Plaintiffs further alleged that these officers failed to disclose material information to participants of the MSC benefits plans and misrepresented the status of those plans and their rights to continuation coverage under COBRA.[2]  The complaint alleged that Mary Kay was vicariously liable for these alleged breaches of fiduciary duty.  Additionally, the MSC Plaintiffs alleged that Mary Kay was

_____

[2]The Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. 99-272 (1986), dealt with a variety of issues.  In this context, reference to COBRA means Title X of COBRA, which amended ERISA to provide for continuation of certain employment benefits.  *See* 29 U.S.C. §§ 1161-1169.

ORDER – PAGE 3

directly liable for failing to provide COBRA continuation coverage to MSC plan participants upon the termination of their employment with MSC.

Mary Kay believed the Complaint alleged claims that were covered under the Policy, and it therefore notified Federal of the lawsuit. Federal denied coverage. Mary Kay subsequently settled the Underlying Lawsuit and then filed suit in this Court seeking to recover the defense and settlement costs incurred as a result of the Underlying Lawsuit, as well as statutory penalties under former Article 21.55 of the Texas Insurance Code. Mary Kay moves for partial summary judgment on its claim that Federal breached its duty to defend Mary Kay under the Fiduciary Liability Section of the Policy. Federal moves for summary judgment on all of Mary Kay's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if, based on the evidence, a reasonable jury could return a verdict for either party. *Id.* at 252. In ruling on a motion for summary judgment, the Court must accept the nonmoving party's evidence and draw all justifiable inferences in its favor. *Id.* at 255.

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. The moving party may meet this burden by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324.

### III. FEDERAL HAD NO DUTY TO DEFEND MARY KAY IN THE UNDERLYING LAWSUIT

Federal moves for summary judgment on the basis that the Complaint did not allege a "wrongful act" as defined by the Policy and, therefore, Federal had no duty to defend Mary Kay in the Underlying Lawsuit. The Court agrees.

Under Texas law,[3] courts generally determine whether a lawsuit triggers an insurer's duty to defend only by comparing the factual allegations in the underlying complaint to the language of the insurance policy. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596 (5th Cir. 2006) (applying Texas law); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Known as the "eight corners rule" or the "complaint-allegation rule," this method requires the Court to compare only the "four corners" of the

---

[3]This case is before the Court on the basis of diversity jurisdiction, and the parties agree that Texas law applies. The Court will therefore apply Texas law.

underlying complaint with the "four corners" of the policy. *GuideOne*, 197 S.W.3d at 308. "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination [of whether the duty to defend is implicated] and allegations against the insured are liberally construed in favor of coverage." *Id.* Furthermore, the Court must focus on the facts alleged in the underlying complaint, not the legal theories asserted. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005) (applying Texas law). The insurer's duty to defend thus depends on whether the factual allegations in the underlying complaint, without regard to their veracity, would potentially state a claim that falls within the policy's coverage. *Liberty Mut.*, 473 F.3d at 600; *GuideOne*, 197 S.W.3d at 310.

Mary Kay contends that the Complaint alleged two types of claims that, if true, constitute "wrongful acts" under the Policy: (1) officers of Mary Kay breached their duties under ERISA in connection with MSC employee benefit plans by diverting plan funds and by failing to disclose material information and making intentional misrepresentations to MSC employees regarding their rights under the MSC employee benefit plans; and (2) Mary Kay violated duties it owed to MSC employees with respect to Mary Kay's own employee benefits plan. The Court will analyze each claim separately.

### A. MSC Employee Benefit Plans Are Not Sponsored Plans Under the Policy

**1. Is MSC a Subsidiary of Mary Kay?** – The MSC Plaintiffs alleged that various defendants breached the fiduciary duties imposed by ERISA by diverting MSC plan assets to pay general corporate obligations, providing false information to MSC plan participants regarding the status of those plans, and making misrepresentations to MSC plan participants

regarding their rights to COBRA continuation coverage upon the termination of their employment. The MSC complaint states that Mary Kay is vicariously liable for these breaches of ERISA fiduciary duties because the defendants were Mary Kay officers acting on behalf of Mary Kay.

Mary Kay contends that these alleged breaches of fiduciary duties fit squarely within the definition of "wrongful act" contained in the Policy. This conclusion oversimplifies the nature of the allegations contained in the Complaint. While the Complaint alleges that Mary Kay officers breached duties imposed by ERISA, it also alleges that these duties existed by reason of the defendants' role as fiduciaries and administrators of the various MSC employee benefits plans. The Policy does not define "wrongful act" as *any* breach of fiduciary duty under ERISA, but rather as "any breach of the . . . duties . . . imposed [by ERISA] *upon fiduciaries* of the *sponsored plan*." App. to Pl.'s Resp. to Defs.' Mot. for Summ. J. at 55. (emphasis added) [hereinafter App.]. Thus, these alleged breaches qualify as "wrongful acts" only if the MSC employee benefits plans qualified as "sponsored plans" under the Policy. A "sponsored plan" under the Policy is one that is sponsored by Mary Kay or one of its subsidiaries; therefore, it is necessary to first determine whether MSC was a subsidiary under the Policy.[4] Under the Policy, "subsidiary" is defined as "any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote

_____

    [4]*See id.* (defining "sponsored plan" as an ERISA plan operated by the Sponsor Organization); *id.* at 54 (defining "sponsor organization" as "any organization designated in Item 4 of the Declarations for this coverage section"); *id* at 45 (Item 4 in Declarations stated as "Mary Kay Holding Corporation and its subsidiaries").

for election of directors is owned or controlled, directly or indirectly, . . . by one or more Sponsor Organization." *Id.*

Federal argues that MSC was not a subsidiary of Mary Kay because, pursuant to MSC's plan of reorganization, the bankruptcy court cancelled all existing MSC stock prior to inception of the Policy. Any interest Mary Kay may have previously held in MSC was terminated by the bankruptcy court's order on May 12, 2002. As a result, Mary Kay did not own any MSC stock when the policy period began or at any other time during the term of the policy. To make this argument, however, Federal relies on the bankruptcy court's order – evidence outside eight corners of the Policy and the Complaint.

***2. Is Extrinsic Evidence Permissible?*** – This Court recently reviewed the state of Texas law regarding an exception to the eight corners rule in certain limited circumstances:

> Two recent cases, one from the Texas Supreme Court and one from the Fifth Circuit, show that this case is within the narrow exception to the "eight corners" rule that permits consideration of extrinsic evidence applicable solely to coverage. The eight corners rule generally provides that the duty to defend is determined only by comparing the pleadings from the underlying lawsuit (four corners) to the insurance policy (four more corners) to see if any of the claims asserted against the insured fall within the scope of coverage, regardless of the truth or falsity of the asserted claims. *See, e.g.*, *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1973). In *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.2d 305 (Tex. 2006), the Texas Supreme Court decided not to create an exception to the eight corners rule for extrinsic evidence that is "mixed," i.e., that is relevant both to coverage and to the merits of the underlying case. *Id.* at 310-11. In so holding, the court cited with approval a Fifth Circuit case predicting that if the Texas Supreme Court ever adopted any exception, it would be narrow and limited to "coverage only" extrinsic evidence. *Id.* at 308-09 (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004)). Thus, although the Texas Supreme Court did not expressly hold that Texas law has such a narrow exception for extrinsic evidence, it is persuasive

authority that the Court would find one if the question were squarely presented.

    In *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596 (5th Cir. 2006), the Fifth Circuit considered whether the trial court had properly considered extrinsic evidence in light of *GuideOne*. The issue was whether the defendant in the underlying state court lawsuit was a permissive user of a vehicle involved in an accident. The federal district court admitted extrinsic evidence on this issue to determine coverage. The Court of Appeals reversed, holding that such admission was error after *GuideOne* (which came out after the district court's decision). In so doing, the Court referred to "the limited exception to the eight corners rule applied by some Texas appellate courts and approved in the *GuideOne* decision's dicta." *Id.* at 602. The Court explained that *Int'l Serv. Ins. Co. v. Boll*, 392 S.W.2d 158 (Tex. Civ. App. – Houston 1965, writ ref'd n.r.e.) "and other Texas intermediate court decisions allowing extrinsic evidence to establish a lack of coverage are distinguishable because they involved explicit policy coverage exclusion clauses, the applicability of which could not be established under the allegations of the complaint but rather required reference to unrelated but readily ascertainable facts." *Id.* at 603 (footnote omitted).

    The Court concludes from *GuideOne* and *Liberty Mut. v. Graham* that, under Texas law, there is an exception to the eight corners rule "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield*, 363 F.3d at 531 (emphasis in original).

*Hermitage Ins. Co. v. Times Square Dallas, Ltd.*, Civil Action No. 3:05-CV-0785-N (N.D. Tex. June 15, 2007), slip op. at 4-6.

    In considering the applicability of this exception, the Court must first address a temporal issue in the Policy regarding subsidiaries. In corporate families, subsidiaries may be acquired and divested. It is not the case that once a subsidiary, always a subsidiary. Thus, in determining whether an entity is a subsidiary under the Policy, the Court must consider at what time. The Policy provides:

> Subsidiary, either in the singular or plural, means any organization in which more than 50% of the outstanding securities or voting rights representing the *present* right to vote for election of directors *is* owned or controlled, directly or indirectly, in any combination, by one or more Sponsor Organization.

App. 55 (emphasis added). Because "subsidiary" is defined in the present tense – "present right to vote . . . is owned or controlled" – the Court holds that to be a subsidiary under the Policy, an entity must be a subsidiary as defined at the inception of the Policy. This is consistent with sections 10 and 11 of the Fiduciary Liability Coverage Section of the Policy, App. 51, which address the circumstances, respectively, of a newly created or acquired subsidiary and a spun-off subsidiary. Section 10 would be unnecessary if "subsidiary" meant owned or controlled at any time during the policy period, and section 11 would be unnecessary if "subsidiary" meant ever at any time in the past owned or controlled. This is also sensible in terms of underwriting; accurate assessment of the insured risk and setting of premiums would be impossible if the risk were open ended, through automatic coverage of new subsidiaries, or indefinite, through perpetual coverage of former subsidiaries.

    With this temporal issue resolved, the Court now turns to the applicability of the narrow extrinsic evidence exception. Because the temporal focus is different for liability than for coverage, this case fits nicely within the exception. First, the complaint in the Underlying Lawsuit unsurprisingly makes no allegations regarding ownership of MSC as of August 1, 2002, as it was concerned with the pre-petition events leading up to MSC's bankruptcy in the 1999-2001 time frame.[5] For the same reason, evidence of subsidiary status

---

[5]Arguably, the complaint makes no factual allegations regarding whether MSC was a subsidiary, as defined in the Policy, at any time. The MSC complaint alleges only that

as of August 1, 2002, "does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield*, 363 F.3d at 531. Accordingly, the Court holds that the issue of subsidiary status as of August 1, 2002 falls with the narrow *GuideOne* and *Liberty Mutual v. Graham* exception to the eight corners rule.

**3. The Rest Is Easy.** – The bankruptcy court's order confirming MSC's plan of reorganization is thus admissible evidence. It conclusively establishes that any equity interest Mary Kay could have had in MSC, either directly or indirectly, was terminated as of May 29, 2002. Thus, as of August 1, 2002, MSC was not a subsidiary of Mary Kay, as defined in the Policy, and the MSC employee benefit plans were not sponsored plans, as defined in the Policy. Therefore, the allegations in the Complaint in connection with the MSC employee benefit plans do not allege wrongful acts within the scope of the Policy. Accordingly, Federal had no duty to defend based on those allegations.

### B. Claims Regarding Mary Kay's Own Employee Benefit Plans

In the alternative, Mary Kay argues that the Underlying Lawsuit asserts claims against Mary Kay in connection with its own employee benefit plans, which are undeniably sponsored plans under the Policy. In particular, Mary Kay argues that the Underlying Lawsuit asserts two covered claims relating to Mary Kay's own plans: Mary Kay violated COBRA by failing (1) to make continuation coverage available to the MSC employees who lost their jobs and (2) to advise MSC plan participants properly of their rights to COBRA

---

Mary Kay, through its officers, "controlled and ran" MSC prior to MSC's bankruptcy. App. 105. The complaint makes no factual allegations regarding Mary Kay's direct or indirect ownership of MSC securities or stock.

continuation coverage.  Although Mary Kay somewhat tangles these two issues together, *see* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 11-12, 20-25 [hereinafter Response], proper coverage analysis requires that they be considered separately.

     ***1. Failure to Provide Continuation Coverage Is Not a Wrongful Act.*** – Mary Kay argues that the Complaint asserts a claim directly against Mary Kay for failure to provide continuation coverage to MSC's former employees.  First, the Complaint argues that Mary Kay and MSC are part of a controlled group.  *See* Complaint ¶ 113, App. 128-29.  Next, the Complaint alleges that Mary Kay sponsored one or more group health plans for the benefit of Mary Kay's employees.  Therefore, the Complaint alleges, Mary Kay was obligated to provided continuation coverage to MSC employees who were terminated.  *Id.*[6]

     The problem with this argument is that this claim for relief in the Complaint does not allege a wrongful act as defined in the Policy.  The obligation to provide continuation coverage rests on a plan's sponsor.  *See* 29 U.S.C. § 1161(a).  Actions taken in the capacity as a plan sponsor are not fiduciary in nature.  *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890-91 (1996).  Breach of a mandatory statutory duty imposed on a plan sponsor, then, is not a breach of fiduciary duty.  *See* 29 U.S.C. § 1002(21)(A) (fiduciary "exercises any discretionary authority or discretionary control respecting management of such plan").  Thus this allegation does not fit within the first two prongs of the definition of "wrongful act" in

---

     [6]While this appears to be a viable theory under COBRA, *see, e.g.*, *Carner v. MGS-576 5th Ave., Inc.*, 992 F. Supp. 340 (S.D.N.Y. 1998), that is not the issue.  The duty to defend applies "even if any of the allegations are groundless, false or fraudulent."  Policy ¶ 3, App. 47.  Thus, the question is not whether the Complaint states a viable claim under ERISA, but whether the Complaint asserts a claim that is covered by the Policy.

the Policy. *See* App. 55. Likewise, it does not fit within the negligent administration prong. "Administration means giving advice to employees, handling records, or effecting enrollment, termination or cancellation of employees under a benefit plan." App. 55 (Endorsement No. 1). Providing continuation coverage, however, is distinct from enrolling a former employee in a benefit plan. *See* 29 U.S.C. § 1162(1) (continuation coverage "must consist of coverage which, as of the time the coverage is being provided, is identical to the coverage provided under the plan . . . ."). Indeed, it is precisely because the former employee is no longer eligible to participate in the plan that COBRA requires the employer to provide continuation coverage, typically through an insurer. *See, e.g.*, *Rittenhouse v. Prof. Micro Sys., Inc.*, 1999 WL 33117263 (S.D. Ohio 1999). Thus, the allegation that Mary Kay failed to provide continuation coverage to former MSC employees is not a covered claim under the Policy.

 *2. The "Failure to Advise" Claim in the Complaint Is Not Covered.* – Mary Kay also argues that the allegation in the Complaint that it failed to advise former MSC employees of their right to continuation coverage states a covered claim. Mary Kay argues (1) the duty to advise employees of their right to continuation coverage falls on the plan administrator, 29 U.S.C. § 1166(a), (c); (2) an administrator is by definition a fiduciary, 29 U.S.C. § 1002(14)(A); and (3) the allegation that Mary Kay wrongly failed to advise employees of their right to continuation coverage therefore qualifies as a wrongful act under the Policy as

either a breach of a fiduciary duty or negligent administration[7] of a sponsored plan.  *See* Response at 12.

The difficulty with this creative argument is that it does not adhere faithfully to the actual allegations in the Complaint.  The Complaint actually states:

> 243.  Marketing Specialists sues Defendants Rochon, Bouras, Byrd and Mary Kay (on whose behalf Rochon, Bouras, and Byrd were acting) under 29 U.S.C. §§ 1132(a)(2) and 1109, for failing to disclose material information, and making knowing and intentional misrepresentations to participants in the Benefit Plans regarding the status of the Plans, their health benefits thereunder, and their rights to continuation coverage under COBRA, all in violation of 29 U.S.C. § 1104.

Complaint ¶ 243, App. 199-200. The Complaint defines "Benefit Plans" as follows: "various employee Benefit Plans that covered Marketing Specialists employees, including without limitation the Marketing Specialists Employee Group Benefit Plan (all such employee benefit plans collectively referred to herein as the 'Benefit Plans')."  Complaint ¶ 7, App. 82-83.

Thus, the allegation in paragraph 243 alleges that Mary Kay is vicariously liable for the actions of its employees in connection with MSC benefits plans, *not Mary Kay's benefit plans*.  Mary Kay acknowledges that paragraph 243 "alleged that Mary Kay was liable for the wrongful acts of its officers, employees and organizations *with respect to the MSC benefits plan*."  Response at 11 (footnote omitted, emphasis added).  Because the MSC benefits plan is not a sponsored plan under the Policy, *see supra* Part III.A, paragraph 243 does not allege a wrongful act under the terms of the Policy.

---

[7]"Administration means giving advice to employees . . . ." App. 55 (Endorsement No. 1).

ORDER – PAGE 14

### C. The Policy Does Not Provide "COBRA Coverage"

Aside from the parties' disputes about MSC plans and Mary Kay's plan, Mary Kay also argues that the Policy generally provides "COBRA coverage," i.e., coverage for any alleged violations of COBRA. In order to make this argument, Mary Kay tries to focus on language in an exception to an exclusion from coverage, in isolation from the insuring agreement. The insuring agreement of the Policy provides:

> [Federal] shall pay on behalf of each of the Insured all Loss for which the Insured becomes legally obligated to pay on account of any Claim first made against the Insured during the Policy Period . . . for a Wrongful Act committed, attempted, or allegedly committed or attempted, before or during the Policy Period by an Insured or by any person for whose Wrongful Acts the Insured is legally responsible.

App. 47. The Policy defines "Wrongful Act" with respect to a sponsored plan as:

> (i) any breach of the responsibilities, obligations or duties imposed upon fiduciaries of the Sponsored Plan by the Employee Retirement Income Security Act of 1974, as amended, or by the common or statutory law of the United States, or any state or other jurisdiction anywhere in the world;
> (ii) any other matter claimed against the Sponsor Organization or an Insured Person solely because of the Sponsor Organization's or the Insured Person's service as a fiduciary of any Sponsored Plan; or
> (iii) any negligent act, error or omission in the Administration of any Sponsored Plan;

App. 55. Mary Kay relies on exclusion 5(f), which provides:

> 5.      The Company shall not be liable for Loss on account of any Claim made against any Insured: . . . (f) based upon, arising from, or in consequence of the failure of the Insured to comply with any law governing workers' compensation, unemployment, social security or disability benefits or any similar law, except the Consolidated Omnibus Budget Reconciliation Act of 1985 and amendments thereto . . . .

App. 48.

ORDER – PAGE 15

The problem is that Mary Kay cannot bypass the insuring agreement and go straight to an exception to an exclusion and argue that Federal has a duty to defend because some of the claims in the Underlying Lawsuit fall within that exception. The Fifth Circuit has explained the process as follows:

> The parties agree that Texas law controls whether [insurer] has a duty to defend [insured] in the [underlying] litigation. Texas courts follow the "eight corners" or "complaint allegations" rule in making this determination. Under this rule, courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether any claim asserted in the pleading is potentially within the policy's coverage. The burden is on the insured to show that a claim against him is potentially within the scope of coverage under the policies; however, if the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply. Once the insurer proves that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion.

*Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 193 F.3d 720, 723 (5th Cir. 1999) (footnotes omitted). Thus, before Mary Kay can invoke the COBRA exception, it must show first a covered claim under the insuring agreement (i.e., a wrongful act), and second, that Federal invoked exclusion 5(f).[8] Accordingly, there is no coverage for an alleged COBRA violation that is not also a wrongful act under the Policy.

## IV. MARY KAY'S REMAINING CLAIMS LIKEWISE FAIL

Under Texas law, neither an insurer's duty to defend nor its duty to indemnify is triggered if the factual allegations in the underlying complaint fall outside the insurance policy's coverage. *See Bayou Bend Homes, Inc. v. Scottsdale Ins. Co.*, 2006 WL 2037564,

---

[8]Federal presumably does not bother to argue for the applicability of this exclusion because it understands the COBRA exception would apply.

at \*4 (S.D. Tex. 2006) (applying Texas law). The Court has determined that the claims asserted by the MSC Plaintiffs are not covered by the Policy. Federal, therefore, had no duty to defend or indemnify Mary Kay arising out of the MSC lawsuit. Accordingly, Federal is entitled to summary judgment on Mary Kay's breach of contract claim.

Similarly, Mary Kay's claim for statutory penalties for violations of former Article 21.55 of the Texas Insurance Code also fails. In order to prevail on a cause of action under former Article 21.55, the plaintiff must establish that there is a claim under the insurance policy for which the insurer is liable. *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001). However, if the Policy does not provide coverage for the claims asserted in the underlying lawsuit, the insurer is not liable and the plaintiff may not recover. *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) ("There can be no liability under article 21.55 if the insurance claim is not covered by the policy."). Accordingly, Mary Kay is not entitled to statutory penalties under former Article 21.55 and the Court grants summary judgment on this claim.

## CONCLUSION

The factual allegations made in the MSC lawsuit did not trigger Federal's duty to defend or indemnify because those allegations did not constitute "wrongful acts" as defined by the Policy. Federal is therefore entitled to summary judgment on all of Mary Kay's claims and the Court grants its motion for summary judgment, and denies Mary Kay's motion.

ORDER – PAGE 17

Signed August 14, 2007.

David C. Godbey
United States District Judge